UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EUGENIO RAMIREZ, and ESTEBAN CUAUTLE, and
TEOFILO ALMONTE, on behalf of themselves,
individually, and on behalf of all others similarly-situated,

                              Plaintiffs,

        -against-

1701 PIZZA LTD. d/b/a LUIGI'S PIZZA, and SALVATORE
ROMANO, individually, and LUIGI ROMANO,
individually,

                              Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

Docket No.: 21-cv-00792

Jury Trial Demanded

       EUGENIO RAMIREZ ("Ramirez"), and ESTEBAN CUAUTLE ("Cuautle"), and TEOFILO ALMONTE ("Almonte"), (all three, together where appropriate, as "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs," as this term is defined below), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for their Complaint against 1701 PIZZA LTD. d/b/a Luigi's Pizza ("Luigi's Pizza"), and SALVATORE ROMANO, individually ("Salvatore"), and LUIGI ROMANO, individually ("Luigi"), (all three, together where appropriate, as "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

       1.     This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit.

1

12, § 146-1.4; (iii) the NYLL's requirement that employers pay employees one hour's pay at the minimum wage rate for any day in which the spread of hours exceeds ten, NYLL § 652(1); 12 NYCRR § 146-1.6; (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2. Defendants are a New York corporation that operates a Manhattan pizzeria / restaurant and its two owners and day-to-day overseers.  Plaintiffs all worked for Defendants in the position of counter person, Ramirez from on or about November 5, 2011 until July 30, 2019, Cuautle from on or about October 29, 2011 until July 30, 2019, and Almonte from in or around October 2013 until in or around late-April 2019.  As described below, throughout their employment, but as is relevant herein, for the six-year period pre-dating the commencement of this action plus any applicable tolling period through the respective ends of their employment ("the Relevant Time Period"), Defendants willfully failed to pay Plaintiffs the overtime wages lawfully due to them under the FLSA and the NYLL.  Specifically, throughout the Relevant Time Period, Defendants required Plaintiffs to work, and Plaintiffs did in fact work, in excess of forty hours each week, or virtually each week, but from the beginning of the Relevant Time Period until on or about April 30, 2018, Defendants paid Ramirez and Cuautle a flat weekly salary that by operation of law compensated them for only their first forty hours worked in a week, and paid Almonte at a regular hourly rate for all hours worked in a week.  Thereafter, from in or around May 2018 until the respective ends of Plaintiffs' employment, Defendants paid Plaintiffs on an hourly basis for their hours worked up to forty, and at Defendants' whim, paid Plaintiffs at their statutorily-required overtime rates for some, but not all, of the hours that they worked in excess of forty in a week, and

nothing, let alone at their statutorily-required overtime rates, for the additional hours that Plaintiffs worked in excess of forty in a week.

3. Additionally, during the Relevant Time Period, for those days when Plaintiffs' shifts exceeded ten hours from beginning to end, which was almost every workday, Defendants did not compensate Plaintiffs with an additional one hour's pay at the minimum wage rate, in violation of the spread of hours provisions of the NYLL and the NYCRR.

4. Furthermore, throughout the Relevant Time Period, Defendants failed to provide Plaintiffs with accurate wage statements on each payday as the NYLL requires.

5. Defendants paid and treated all of their non-managerial employees in the same manner.

6. Accordingly, Plaintiffs bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA. Plaintiffs bring their claims under the NYLL and its supporting regulations on behalf of themselves, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-into this action.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9. Throughout the Relevant Time Period, Plaintiffs worked for Defendants in New York and were "employees" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10. At all relevant times herein, Defendant Luigi's Pizza was and is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 1701 1st Avenue, New York, New York 10128, and that is registered with the New York State Department of State to receive service of process c/o 1701 Pizza Ltd., 211-10 18th Avenue, Apartment 3B, Bayside, New York 11360.

11. At all relevant times herein, Defendants Salvatore and Luigi, who are brothers, were and are the co-owners and day-to-day overseers of Defendant Luigi's Pizza, who in those roles, together were and are ultimately responsible for all matters with respect to the terms and conditions of employment for all of Luigi's Pizza's employees, including Plaintiffs, in that they had and exercised the power to hire and fire all employees, supervise and control employee work schedules, determine the rates and methods of wage payments to all employees, and who were responsible for maintaining employment records.

12. At all relevant times herein, all Defendants were and are "employers" within the meaning of the FLSA, the NYLL, and the NYCRR. Additionally, at all times relevant to the FLSA, Defendant Luigi's Pizza's qualifying annual business exceeded and exceeds $500,000.00, and Luigi's Pizza was and is engaged in interstate commerce within the meaning of the FLSA, as

it employed and employs two or more employees, bought and buys food products and other goods from vendors in states other than New York that it then sells or uses to make the food that it sells to its customers in New York, such as cooking utensils, beverages, and cleaning products, and also accepts credit cards as a form of payment based on cardholder agreements with out-of-state companies, as well as cash that naturally moves across state lines, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## COLLECTIVE ACTION ALLEGATIONS

13. Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on their own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial employees, who during the applicable FLSA limitations period, performed any work for Defendants at Luigi's Pizza, and who consent to file a claim to recover damages for unpaid overtime compensation and liquidated damages that are legally due to them ("FLSA Plaintiffs").

14. Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts as Relevant to All Plaintiffs" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

15. At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and FLSA Plaintiffs at an amount equal to the rate of one and one-half times their

respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

16. Thus, Plaintiffs and all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## BACKGROUND FACTS AS RELEVANT TO ALL PLAINTIFFS

17. Defendant Luigi's Pizza is a corporation that operates a Manhattan pizzeria and restaurant that serves Italian cuisine.

18. Defendants Salvatore and Luigi co-own, manage, and oversee the business on a day-to-day basis. They together are responsible for making all personnel-related decisions with respect to all of Luigi's Pizza's employees, including Plaintiffs, such as who to hire and fire, what wages to pay to employees and by what method, and what hours those employees are required to work. They are also responsible for maintaining employment records for all employees.

19. Defendants employed all Plaintiffs in the position of counter person, in which role their duties consisted of, *inter alia*, cooking and heating up food, assisting customers by taking orders and cashing them out, and cleaning the restaurant and the restaurant's equipment.

20. Defendants paid Plaintiffs on a weekly basis.

21. On each occasion when they paid Plaintiffs during at least the Relevant Time Period, Defendants failed to provide Plaintiffs with a wage statement that accurately listed, *inter alia¸* their actual hours worked for that week or their regular and overtime rates of pay for all hours worked.

22. For each occasion during at least the Relevant Time Period when Defendants required Plaintiffs to work, and Plaintiffs did work, a shift that exceeded ten hours from beginning

to end, including those in the specific weeks identified below, and which was nearly every shift that Plaintiffs worked throughout the Relevant Time Period, Defendants did not compensate Plaintiffs with an additional one hour's pay at the minimum wage rate.

23. Defendants treated Plaintiffs and FLSA Plaintiffs in the same manner described herein.

24. Defendants acted in this manner to maximize their profits and minimize their labor costs and overhead.

25. Each hour that Plaintiffs and FLSA Plaintiffs worked was for Defendants' benefit.

## INDIVIDUAL BACKGROUND FACTS

**Plaintiff Ramirez**

26. Defendants employed Plaintiff Ramirez from on or about November 5, 2011 until July 30, 2019.

27. From at least the beginning of the Relevant Time Period through approximately the end of December 2016, Defendants required Ramirez to work, and Ramirez did work, twelve-hour shifts from Monday through Saturday from 9:00 a.m. to 9:00 p.m.  Thereafter, from January 2017 until July 30, 2019, Defendants required Ramirez to work, and Ramirez did work, twelve-hour shifts from Tuesday through Saturday, still from 9:00 a.m. to 9:00 p.m., and occasionally on a sixth day per week.  Regardless of the time period, during each of these shifts, Ramirez typically received a thirty-minute uninterrupted break.  Thus, Defendants required Ramirez to work, and Ramirez did work, a total of either fifty-seven and one-half or sixty-nine hours in a week.

28. In exchange for Ramirez's work, from the beginning of the Relevant Time Period through approximately December 31, 2017, Defendants paid Ramirez a flat weekly salary, in cash, of: $630.00 in 2014; $660.00 in 2015; $690.00 in 2016; and $720.00 in 2017.  This flat weekly

salary operated to cover only Ramirez's first forty hours of work per week and amounts to hourly rates of pay of: $15.75 in 2014; $16.50 in 2015; $17.25 in 2016; and $18.00 in 2017.

29. Thereafter from January 2018 until late-April 2018, Defendants paid Ramirez partly by check and the remainder in cash, still at the same total flat weekly salary of $720.00, yielding an hourly rate of $18.00.

30. From in or around May 2018 and continuing until the end of Ramirez's employment, Defendants paid Ramirez on an hourly basis, by check, for his hours worked in a week up to forty, at the rate of $15.00 until June 16, 2019, and then at the rate of $16.00 from June 17, 2019 until the end of Ramirez's employment. During this time, at their whim, Defendants paid Ramirez for some, but not all, of the hours that he worked in a week in excess of forty at the rate of one and one-half times the regular rate reported on his check, at respective rates of $22.50 and $24.00. Defendants did not pay Ramirez at any rate for the remainder of his hours worked over forty in a week.

31. Accordingly, throughout his employment, Defendants failed to pay Ramirez for all hours that he worked over forty in a week at the rate of one and one-half times his regular hourly rate.

32. By way of example only, during the week of December 5 through December 11, 2016, Ramirez worked the following schedule:

    Monday, December 5, 2016: 9:00 a.m. until 9:00 p.m.;

    Tuesday, December 6, 2016: 9:00 a.m. until 9:00 p.m.;

    Wednesday, December 7, 2016: 9:00 a.m. until 9:00 p.m.;

    Thursday December 8, 2016: 9:00 a.m. until 9:00 p.m.;

    Friday, December 9, 2016: 9:00 a.m. until 9:00 p.m.;

      Saturday, December 10, 2016: 9:00 a.m. until 9:00 p.m.; and

      Sunday, December 11, 2016: off.

During each of these shifts, Ramirez received an uninterrupted thirty-minute break. Accordingly, Ramirez worked a total of sixty-nine hours during this week. In exchange for his work this week, Defendants paid Ramirez a flat salary of $690.00 for his first forty hours of work only, which amounts to an hourly rate of $17.25. Defendants did not pay Ramirez for any of the twenty-nine hours that he worked in excess of forty during this week at any rate of pay, much less at his overtime rate of $25.88.

    33.    By way of a second example only, during the week of April 15 through April 21, 2019, Ramirez worked the following schedule:

      Monday, April 15, 2019: off;

      Tuesday, April 16, 2019: 9:00 a.m. until 9:00 p.m.;

      Wednesday, April 17, 2019: 9:00 a.m. until 9:00 p.m.;

      Thursday April 18, 2019: 9:00 a.m. until 9:00 p.m.;

      Friday, April 19, 2019: 9:00 a.m. until 9:00 p.m.;

      Saturday, April 20, 2019: 9:00 a.m. until 9:00 p.m.; and

      Sunday, April 21, 2019: off.

During each of these shifts, Ramirez received an uninterrupted thirty-minute break. Accordingly, Ramirez worked a total of fifty-seven and one-half hours during this week. In exchange for his work this week, as reflected on Ramirez's paystub, Defendants paid Ramirez a total of $690.00, comprised of $15.00 per hour for his first forty hours of work, and at an overtime rate of $22.50 for four hours that Ramirez worked in excess of forty. Defendants did not pay Ramirez anything

for the additional thirteen hours and thirty minutes that he worked in excess of forty during this week, much less at his overtime rate of $22.50.

**Plaintiff Cuautle**

34. Defendants employed Cuautle from on or about October 29, 2011 until July 30, 2019.

35. From at least the beginning of the Relevant Time Period through approximately the end of June 2017, Defendants required Cuautle to work, and Cuautle did work, at least twelve-hour shifts from Wednesday through Monday, three days per week from 10:00 a.m. to 10:00 p.m., and three days per week from 10:00 a.m. until 10:30 p.m. Thereafter, from approximately July 2017 until July 30, 2019, Defendants required Cuautle to work, and Cuautle did work, at least twelve-hour shifts five days a week, with Tuesdays and Saturdays off, two days per week from 10:00 a.m. to 10:00 p.m., and three days per week from 10:00 a.m. until 10:30 p.m. Regardless of the time period, during each of these shifts, Cuautle typically received a thirty-minute uninterrupted break. Thus, Defendants required Cuautle to work, and Cuautle did work, a total of either fifty-nine or seventy and one-half hours per week.

36. In exchange for Cuautle's work, from the beginning of the Relevant Time Period through approximately December 31, 2017, Defendants paid Cuautle a flat weekly salary, in cash, of: $630.00 in 2014; $660.00 in 2015; $690.00 in 2016; and $720.00 in 2017. This flat weekly salary operated to cover only Cuautle's first forty hours of work per week and amounts to hourly rates of pay of: $15.75 in 2014; $16.50 in 2015; $17.25 in 2016; and $18.00 in 2017.

37. Thereafter, from January 2018 until late-April 2018, Defendants paid Cuautle partly by check and the remainder in cash, still at the same total flat weekly salary of $720.00, yielding an hourly rate of $18.00.

38.     From in or around May 2018 and continuing until the end of Cuautle's employment, Defendants paid Cuautle on an hourly basis, by check, for his hours worked in a week up to forty at rates of: $14.00 from in or around May 2018 until November 4, 2018; $15.00 from November 5, 2018 until March 17, 2019; and $16.00 from March 18, 2019 until the end of Cuautle's employment.  During this time, at their whim, Defendants paid Cuautle for some, but not all, of the hours that he worked in a week in excess of forty at the rate of one and one-half times the regular rate reported on his check, at respective rates of $21.00, $22.50, and $24.00.  Defendants did not pay Cuautle at any rate for the remainder of his hours worked over forty in a week.

39.     Accordingly, throughout his employment, Defendants failed to pay Cuautle for all hours that he worked over forty in a week at the rate of one and one-half times his regular hourly rate.

40.     By way of example only, during the week of November 7 through November 13, 2016, Cuautle worked the following schedule:

Monday, November 7, 2016: 10:00 a.m. until 10:00 p.m.;

Tuesday, November 8, 2016: off;

Wednesday, November 9, 2016: 10:00 a.m. until 10:00 p.m.;

Thursday November 10, 2016: 10:00 a.m. until 10:30 p.m.;

Friday, November 11, 2016: 10:00 a.m. until 10:30 p.m.;

Saturday, November 12, 2016: 10:00 a.m. until 10:30 p.m.; and

Sunday, November 13, 2016: 10:00 a.m. until 10:00 p.m.

During each of these shifts, Cuautle received an uninterrupted thirty-minute break.  Accordingly, Cuautle worked a total of seventy hours and thirty-minutes during this week.  In exchange for his work this week, Defendants paid Cuautle a salary of $690.00 for his first forty hours of work only,

which amounts to an hourly rate of $17.25.  Defendants did not pay Cuautle for any of the thirty hours and thirty-minutes that Cuautle worked in excess of forty during this week at any rate of pay, much less at his overtime rate of $25.88.

41. By way of a second example only, during the week of June 25 through July 1, 2018, Cuautle worked the following schedule:

> Monday, June 25, 2018: 10:00 a.m. until 10:00 p.m.;
>
> Tuesday, June 26, 2018: off;
>
> Wednesday, June 27, 2018: 10:00 a.m. until 10:30 p.m.;
>
> Thursday June 28, 2018: 10:00 a.m. until 10:30 p.m.;
>
> Friday, June 29, 2018: 10:00 a.m. until 10:30 p.m.;
>
> Saturday, June 30, 2018: off; and
>
> Sunday, July 1, 2018: 10:00 a.m. until 10:00 p.m.

During each of these shifts, Cuautle received an uninterrupted thirty-minute break.  Accordingly, Cuautle worked a total of fifty-nine hours during this week.  In exchange for his work this week, as reflected on Cuautle's paystub, Defendants paid Cuautle a total of $770.00, comprised of $14.00 per hour for his first forty hours of work, and at an overtime rate of $21.00 for ten hours that Cuautle worked in excess of forty.  Defendants did not pay Cuautle anything for the additional nine hours that he worked in excess of forty this week, much less at his overtime rate of $21.00.

**Plaintiff Almonte**

42. Defendants employed Almonte from in or around October 2013 until in or around late-April 2019.

43. From at least the beginning of the Relevant Time Period through the end of Almonte's employment, Defendants required Almonte to work, and Almonte did work, twelve-

12

hour shifts from Wednesday through Sunday from 11:00 a.m. to 11:00 p.m., and at least twice each month, a sixth day at the same times. During each of these shifts, Almonte typically received a thirty-minute uninterrupted break. Thus, Defendants required Almonte to work, and Almonte did work, a total of either fifty-seven and one-half or sixty-nine hours per week.

44. In exchange for Almonte's work, throughout the Relevant Time Period, Defendants paid Almonte on an hourly basis at the regular rates of: $10.50 from the beginning of the Relevant Time Period until approximately December 31, 2015; $12.50 from approximately January 1, 2016 until approximately December 31, 2017; and $13.75 from approximately January 1, 2018 until the end of his employment in or around late-April 2019.

45. From the beginning of the Relevant Time Period until approximately December 31, 2017, Defendants paid Almonte at his regular hourly rate, in cash, for all hours worked, including those in excess of forty per week.

46. Thereafter, from January 2018 until late-April 2018, Defendants paid Almonte partly by check and the remainder in cash, still at Almonte's regular hourly rate of $13.75, for all hours worked, including those in excess of forty per week.

47. From in or around May 2018 and continuing until the end of Almonte's employment, Defendants paid Almonte on an hourly basis, still at his regular rate of $13.75, by check, for his hours worked in a week up to forty, and at their whim, paid Almonte for some, but not all, of the overtime hours that he worked in a week in excess of forty at the rate of one and one-half times the regular rate reported on his check, or $20.63. Defendants did not pay Almonte at any rate for the remainder of his hours worked over forty in a week.

48. Accordingly, throughout his employment, Defendants failed to pay Almonte for all hours that he worked over forty in a week at the rate of one and one-half times his regular hourly rate.

49. By way of example only, during the week of May 21 through May 27, 2018, Almonte worked the following schedule:

>Monday, May 21, 2018: 11:00 a.m. until 11:00 p.m.;
>
>Tuesday, May 22, 2018: off;
>
>Wednesday, May 23, 2018: 11:00 a.m. until 11:00 p.m.;
>
>Thursday, May 24, 2018: 11:00 a.m. until 11:00 p.m.;
>
>Friday, May 25, 2018: 11:00 a.m. until 11:00 p.m.;
>
>Saturday, May 26, 2018: 11:00 a.m. until 11:00 p.m.; and
>
>Sunday, May 27, 2018: 11:00 a.m. until 11:00 p.m.

During each of these shifts, Almonte received an uninterrupted thirty-minute break. Accordingly, Almonte worked a total of sixty-nine hours during this week. In exchange for his work this week, as reflected on Almonte's paystub, Defendants paid Almonte a total of $756.25, comprised of $13.75 per hour for his first forty hours of work, and an overtime rate of $20.63 for ten hours that Almonte worked in excess of forty. Defendants did not pay Almonte anything for the additional nineteen hours that he worked in excess of forty this week, much less at his overtime rate of $20.63.

### **FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the FLSA*

50. Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

52. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

53. As also described above, Plaintiffs and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

54. Defendants willfully violated the FLSA.

55. Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

56. Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

## **SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the NYLL and the NYCRR*

57. Plaintiffs and any FLSA Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. NYLL § 160 and 12 NYCRR § 146-1.4 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

59. As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-into this action, are employees within the meaning of the NYLL and the NYCRR.

60. As also described above, Plaintiffs and any FLSA Plaintiff who opts-into this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

61. Plaintiffs and any FLSA Plaintiff who opts-into this action, are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

62. Plaintiffs and any FLSA Plaintiff who opts-into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Violation of the NYLL's and the NYCRR's Spread of Hours Requirements*

63. Plaintiffs and any FLSA Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

64. NYLL § 652 and 12 NYCRR § 146-1.6 provide that employees shall receive one hour's pay at the minimum hourly wage rate for any day worked in which their spread of hours exceeds ten.

65. As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-into this action, are employees within the meaning of the NYLL and the NYCRR.

66. As also described above, Plaintiffs and any FLSA Plaintiff who opts-into this action, worked days where their spread of hours exceeded ten, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's spread-of-hours provisions.

67. Plaintiffs and any FLSA Plaintiff who opts-into this action, are entitled to spread-of-hours pay, in the amount of one hour's pay at the minimum hourly wage rate, for any day that they worked in which their spread of hours exceeded ten.

68. Plaintiffs and any FLSA Plaintiff who opts-into this action, are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's spread-of-hours provisions.

### **FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Accurate Wage Statements in Violation of the NYLL*

69. Plaintiffs and any FLSA Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

70. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

71. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action, are employees within the meaning of the NYLL.

72. As also described above, Defendants, on each payday, failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action, at first with any wage statements, and later with wage statements that accurately contained all of the criteria that the NYLL requires.

73. Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, in the amount of $100.00 for each workweek after the violation occurred, up to a statutory cap of $2,500.00.

74. On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs and any FLSA Plaintiff who opts-into this action, in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

## DEMAND FOR A JURY TRIAL

75. Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiffs and/or FLSA Plaintiffs for participation in any form of this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

  e. All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

  f. Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

  g. Awarding Plaintiffs and FLSA Plaintiffs their reasonable attorneys' fees, as well as their costs and disbursements incurred in connection with this action, including expert witness fees and any other costs and expenses, and an award of a service payment to Plaintiffs;

  h. Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

  i. Pre-judgment and post-judgment interest, as provided by law; and

  j. Granting Plaintiffs and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

Dated: Garden City, New York
   January 28, 2021

              Respectfully submitted,

              BORRELLI & ASSOCIATES, P.L.L.C.
              *Attorneys for Plaintiffs*
              910 Franklin Avenue, Suite 200
              Garden City, New York 11530
              Tel. (516) 248-5550
              Fax. (516) 248-6027

     By: _____
          DANIELLE E. MIETUS, ESQ. (DM 1891)
          ALEXANDER T. COLEMAN, ESQ. (AC 1717)
          MICHAEL J. BORRELLI, ESQ. (MB 8533)