BORRELLI & ASSOCIATES
P.L.L.C.
www.employmentlawyernewyork.com

655 Third Avenue	910 Franklin Avenue
Suite 1821	Suite 200
New York, NY 10017	Garden City, NY 11530
Tel. No. 212.679.5000	Tel. No. 516.248.5550
Fax No. 212.679.5005	Fax No. 516.248.6027

February 14, 2023

*Via ECF*
The Honorable Andrew L. Carter
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *Eugenio Ramirez, et al. v. 1701 Pizza Ltd. d/b/a Luigi's Pizza, et al.*
     <u>Docket No.: 21-cv-00792 (ALC)(SDA)</u>

Dear Judge Carter:

  As the Court knows, we represent Plaintiffs Eugenio Ramirez, Esteban Cuautle, and Teofilo Almonte in this wage and hour matter arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA") against Defendants 1701 Ltd. d/b/a Luigi's Pizza, Salvatore Romano, and Luigi Romano. As the court-appointed mediator advised the Court on November 28, 2022, ECF 45, the parties have reached a settlement in principle following lengthy negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the parties, to explain the terms of the settlement, and to request that the Court approve of the settlement of Plaintiffs' FLSA claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and dismiss this case with prejudice pursuant to Rule 41(a)(2).[1]

**I.**  <u>Procedural History and Settlement Agreement Terms</u>

  On January 28, 2021, Plaintiffs initiated this action seeking relief for Defendants' alleged violations of, *inter alia*, the overtime provisions of the FLSA. In their Complaint, Plaintiffs alleged

---

[1] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the parties' Agreements, do not require court approval for dismissal under *Cheeks*. *See, e.g., Feliz v. Parkoff Operating Corp.*, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018); *Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018).

that Defendants - - a corporation that operated a now-closed Manhattan pizzeria and its two owner-operators - - employed Plaintiffs as counter people, Ramirez from on or about November 5, 2011 until July 30, 2019, Cuautle from on or about October 29, 2011 until July 30, 2019, and Almonte from in or around October 2013 until in or around late-April 2019.  Plaintiffs further alleged that throughout their employment, they frequently worked over forty hours in a week, but Defendants paid them a flat weekly salary regardless of hours worked until on or about April 30, 2018, and then began paying them for some but not all of the hours Plaintiffs worked in excess of forty per week, still without the statutorily-required overtime premium, for the remainder of their employment.

Defendants initially defaulted on answering the Complaint, and Plaintiffs requested and obtained Certificates of Default.  Defendants then appeared in this litigation through counsel on May 25, 2022.  On the next day, May 26, 2022, Judge Carter referred this case to mediation.  After being rescheduled twice, a mediation was held with Mediator Michael Levy on November 9, 2022.  The parties exchanged significant pre-mediation discovery, including payroll records, signed payment receipts for portions of 2018 and 2019, and other records related to Plaintiffs' claims.

At mediation, with Mediator Levy's assistance, the parties came close to reaching a resolution, but were unable to agree on the exact amount and payment schedule.  Over the next few weeks, counsel continued to negotiate until eventually reaching an agreement in principle, which the parties have now reduced to writing.  Pursuant to the Agreement, Defendants will pay a total of $135,000 ("Settlement Sum"), payable in one lump sum within five calendar days after the Court issues an Order approving this Agreement and dismissing the case.  The Settlement Sum will be distributed as follows:

| Payment Recipient[2] | Total Sum Due | Share of Costs | Attorneys' Fees |
|---|---|---|---|
| Eugenio Ramirez | $55,595.75 | $473.59 | $18,531.92 |
| Esteban Cuautle | $52,748.21 | $449.34 | $17,582.74 |
| Teofilo Almonte | $26,656.04 | $227.07 | $8,885.35 |
| Borrelli & Associates, P.L.L.C. | | $1,150 | $45,000 |

Each Plaintiff's individual share will be divided into two equal checks, one representing alleged back wages with withholdings taken therefrom, and the other representing liquidated damages and interest to be reported on an IRS Form 1099.  Regarding Plaintiffs' counsel's fees

---

[2] Plaintiffs' individual shares of the settlement are based on their *pro rata* alleged damages for all claims brought in this case, including those under New York law, which vary based on their length of employment and alleged hours of work with Defendants.

2

and costs, counsel seeks approval of the total amount of $46,150.00, representing out-of-pocket litigation expenses of $1,150.00, and 33.33% of the Settlement Sum, amounting to $45,000.00. Pursuant to the Agreement, Defendants' counsel has represented that the Settlement Sum is being held in escrow by Defendants' counsel pending the Court's approval of the parties' settlement agreement and the discontinuance of this action with prejudice.

For the reasons described below, Plaintiffs, on behalf of the parties, respectfully submit that the amounts and allocations, as well as all other terms, are fair and reasonable under the circumstances of this case.

## II.     The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07 (with prejudice); *see also Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022) (without prejudice). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.*  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019).  The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Rodriguez v. 3rd Ave 26 Rest. Corp.*, 2021 WL 6052856, at *1 (S.D.N.Y. Nov. 17, 2021) (Carter, *J.*) (citing and applying *Wolinsky* factors).  The parties submit that their settlements of Plaintiffs' FLSA claims are fair and reasonable based on an analysis of the *Wolinsky* factors.

### A.     *Range of Possible Recovery*

Plaintiffs alleged that throughout their employment, they worked between fifty-seven to seventy hours per week.  They further claim that from the beginning of their employment until approximately May 2018, Defendants paid them a flat weekly rate, regardless of how many hours they worked.  From May 2018 until the end of their employment, they claim that Defendants paid them an hourly rate, but compensated them for some but not all of the hours they worked over

3

forty per week at a rate of time-and-one-half their regular hourly rate. As Plaintiffs filed this case on January 28, 2021, the maximum FLSA statutory period would date back to January 28, 2018. *See* 29 U.S.C. § 255(a). Defendants vigorously disputed that any overtime was owed for the vast majority of that period, as they maintain payroll records covering the period from May 2018 through the end of Plaintiffs' employment, and further maintain that they acted in good faith with respect to their efforts to comply with the law.

Plaintiffs estimate their FLSA overtime damages as follows:[3]

| Plaintiff | FLSA Overtime Damages | FLSA Liquidated Damages | Total | Settlement Sum After Attorneys' Fees |
|---|---|---|---|---|
| Ramirez | $18,351.44 | $18,351.44 | $36,702.88 | $36,590.24 |
| Cuautle | $24,007.64 | $24,007.64 | $48,015.28 | $34,716.14 |
| Almonte | $14,392.50 | $14,392.50 | $28,785.00 | $17,543.62 |

Thus, Plaintiffs' share of the Settlement Sum *after attorneys' fees and costs are deducted* will provide them with between 122% to 199% of their actual unpaid overtime compensable under the FLSA, and between 61% to 100% of their total FLSA damages, including liquidated damages.

This is an extraordinarily good result, particularly in light of the substantial risk of non-payment in light of the restaurant's closure and the risk of Plaintiffs being unable to establish that they worked as many hours as claimed, particularly after May 2018 when Defendants began providing paystubs showing that at least some overtime was paid. The percentages obtained here are far higher than the amounts that courts have found reasonable in other cases. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.   *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the parties failed to reach a settlement, written discovery, depositions of the parties, and thereafter competing motions for summary judgment would have surely followed. Thereafter, the parties were to proceed to trial on the merits of Plaintiffs' claims, which would have required Plaintiffs to establish at least some of their claims

---

[3] Ramirez's estimated total maximum recoverable damages under the NYLL are $134,176.53. Cuautle's estimated total maximum recoverable damages under the NYLL are $127,560.29. Almonte's estimated total maximum recoverable damages under the NYLL are $67,333.77.

4

*via* testimony in light of Defendants' limited records. At bottom, even if successful at the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendants are now offering. The risk of non-collection was especially great here, given that the restaurant is closed, leaving only the two individual defendants to collect from. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc*., 2015 WL 2374515, at \*5 (E.D.N.Y. May 18, 2015). With litigation risks and expenses only expected to substantially rise for all parties in this matter, the Settlement Sum is fair and reasonable.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement was the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded after many negotiations between counsel, which primarily spanned from November 7, 2022 until January 25, 2023, including a mediation with Mediator Michael Levy, a professional, neutral mediator with significant experience mediating wage-and-hour settlements. There was no fraud or collusion here. *E.g. Romero v. La Revise Assocs., L.L.C*., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (internal citations and quotations omitted); *Diaz v. Scores Holding Co.*, 2011 WL 6399468, at \*2 (S.D.N.Y. July 11, 2011) ("In FLSA settlements, just as in Rule 23 settlements, arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved is procedurally fair, reasonable, adequate, and not a product of collusion.").

Furthermore, the Agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs have not agreed to a general release of all claims, but rather, a release of all wage claims only. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at \*2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at \*6-7 (S.D.N.Y. March 30, 2015); *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at \*3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at \*3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206). Likewise, the Agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at \*1 (citing *Lopez*, 2015 WL 1455689, at \*5); *also compare Ezpino*, 2017 WL 3037483, at \*2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision"); *with Gonzalez*, 2015 WL 6550560, at \*3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

Moreover, the non-disparagement clause in the Agreement is mutual, and contains a carve-out allowing the parties to "communicate truthfully regarding their experience during the Action, including with respect to the claims and defenses asserted in the Action." The Agreement further provides that "nothing in this Paragraph 6 shall restrict any Party from providing truthful information in response to a court order, lawfully served subpoena, or other duly served legal process." Courts approve provisions of this sort. *See Lopez*, 96 F. Supp. 3d at 180 (any non-disparagement clause "must include a carve-out for truthful statements about plaintiffs' experience litigating their case").

### D. *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the Settlement Sum attributable to attorneys' fees is $45,000.00, limited to one-third of the Settlement Sum, plus reasonably incurred expenses in the amount of $1,150. While the Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604 (*emphasis added*), courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total gross settlement. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully.'"); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement). Additionally, the 33.3% contingency fee sought here is lower than the maximum percentage Plaintiffs agreed to when they retained Borrelli & Associates, P.L.L.C., which counsel reserves the right to seek in an appropriately difficult case. *See* **Exhibit B** (at the Court's direction, fully Executed Retainer Agreements in English and Spanish between Plaintiffs and counsel).

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement*

6

*Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of February 14, 2023, counsel has billed 263.3 hours in total on this matter - - an adversarial case as detailed herein - - amounting to $53,327.50 in fees, an amount in excess of counsel's attorneys' fees requested herein. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiffs' counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $295.00 per hour for Lauren R. Reznick, a senior associate with over seven years of experience in employment litigation; $250.00 per hour for other associates working on the matter; and $90.00 for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt,* 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); *Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh*, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y Sept. 30, 2021). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit C**. Biographical information for each of the attorneys who performed work on this case is attached hereto as **Exhibit D**.

Additionally, Plaintiffs' counsel seeks reimbursement for out-of-pocket litigation expenses in the amount of $1,150.00, comprised of the initial filing fee, service of process fees, postage, research, and PACER fees. Plaintiffs' counsel's expense report reflecting these costs is attached hereto as **Exhibit E**.

Accordingly, Plaintiffs' counsel's request for a total of $46,150.00 in fees and costs is entirely reasonable.

### III. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court: approve the Settlement Agreement; dismiss all claims in this matter with prejudice; and retain jurisdiction to enforce the terms of the parties' Agreements should that become necessary. A proposed order of dismissal is attached hereto as **Exhibit F**.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Lauren R. Reznick, Esq.
*For the Firm*

C:   All Parties (*via* ECF)